**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GOLDEN UNICORN ENTERPRISES, INC.,
and BIG DOG BOOKS, LLC, *on behalf of*
*themselves and all those similarly situated*,

              Plaintiffs,

    v.

AUDIBLE, INC.,

              Defendant.

Case No.  1:21-cv-07059-JMF

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**
**PARTIAL MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................2

LEGAL STANDARD.............................................................................................................4

ARGUMENT .........................................................................................................................5

      I.      Plaintiffs' Implied Covenant of Good Faith and Fair Dealing Claim
            Must Be Dismissed as Duplicative of Their Breach of Contract Claim. .................5

      II.     Plaintiffs' Unjust Enrichment Claim Must Be Dismissed Because the
            Contracts Are Valid and Enforceable. ...................................................................7

CONCLUSION......................................................................................................................8

# TABLE OF AUTHORITIES

Page

**CASES**

*ARI & Co. v. Regent Int'l Corp.*,
    273 F. Supp. 2d 518 (S.D.N.Y. 2003)..................................................................5, 6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................4, 5

*Atlantis Info. Tech., GmbH v. CA, Inc.*,
    485 F. Supp. 2d 224 (E.D.N.Y. 2007) ..............................................................5, 8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................................4, 5

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002)...................................................................................3

*Cordell v. McGraw-Hill Companies, Inc.*,
    525 F. App'x 22 (2d Cir. 2013) ..............................................................................6

*Gitman v. Pearson Educ., Inc.*,
    No. 14 Civ. 8626(GBD), 2015 WL 5122564 (S.D.N.Y. Aug. 31, 2015) .................5

*Harris v. Provident Life & Accident Ins. Co.*,
    310 F.3d 73 (2d Cir. 2002).....................................................................................5

*Hartford Fire Ins. Co. v. Federated Dep't Stores, Inc.*,
    723 F. Supp. 976 (S.D.N.Y. 1989) ........................................................................7

*Hayden v. Paterson*,
    594 F.3d 150 (2d Cir. 2010)...................................................................................5

*ImagePoint, Inc. v. JPMorgan Chase Bank, Nat. Ass'n*,
    27 F. Supp. 3d 494 (S.D.N.Y. 2014)......................................................................7

*In re Yukos Oil Co. Sec. Litig.*,
    No. 04 Civ. 5243(WHP), 2006 WL 3026024 (S.D.N.Y. Oct. 25, 2006).................3

*Learning Annex Holdings, LLC v. Rich Global, LLC*,
    No. 09 Civ. 4432(SAS), 2011 WL 3586138 (S.D.N.Y. Aug. 12, 2011) ..................7

*Maryland Cas. Co. v. W.R. Grace & Co.*,
    218 F.3d 204 (2d Cir. 2000)...................................................................................7

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*New Windsor Vol. Amb. Corps. Inc. v. Meyers*,
    442 F.3d 101 (2d Cir. 2006)..........................................................................................7

*Opternative, Inc. v. Jand, Inc.*,
    No. 17 Civ. 6936 (JFK), 2018 WL 3747171 (S.D.N.Y. Aug. 7, 2018)....................................7

*Porrazzo v. Bumble Bee Foods, LLC*,
    822 F.Supp.2d 406 (S.D.N.Y. 2011)............................................................................3

*Professional Merchant Advance Capital, LLC v. C Care Services, LLC*,
    No. 13–CV–6562 (RJS), 2015 WL 4392081 (S.D.N.Y. July 15, 2015)....................................8

*The Youngbloods v. BMG Music*,
    No. 07 Civ. 2394 (GBD), 2008 WL 919617 (S.D.N.Y. March 28, 2008) ............................5

**STATUTES AND RULES**

Federal Rule of Civil Procedure 12(b)(6) ...................................................................1, 4

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Audible, Inc. respectfully submits this Memorandum in Support of Audible's Partial Motion to Dismiss Plaintiff's Complaint (Dkt. No. 1).

## INTRODUCTION

Audible is a leading distributor of audio content.  Among other audio entertainment options, Audible provides its users access to a broad catalog of audiobooks.  Audible created and offered a way for independent authors to produce and publish their own works as audiobooks through Audible's "Audiobook Creation Exchange" service, known as ACX.  Since the service's inception, thousands of authors—from the well-established to those just starting out—have brought their books to life using ACX.

Plaintiffs Golden Unicorn Enterprises, Inc. and Big Dog Books, LLC are authors who have self-produced and self-published books through ACX.  They claim that Audible has "maintained a secret system of accounting" to deprive ACX authors of audiobook royalties they are contractually due.  Compl. ¶ 2.  That is false.  Audible's royalty and returns policies have been publicly available for nearly a decade; with ready access to those policies, Plaintiffs repeatedly entered into new contracts with Audible for each new title they produced and published; and Audible neither breached its contracts with authors nor underpaid royalties.

Audible will establish those facts for the Court at the appropriate time, but the scope of this Rule 12(b)(6) motion is narrower.  Plaintiffs assert three causes of action predicated on the same facts: breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment.  Because Plaintiffs' implied covenant and unjust enrichment claims are duplicative of their breach of contract claim and seek the same relief, those redundant claims are prohibited as a matter of black-letter New York law and must be dismissed.

1

**BACKGROUND**

Audible is the leading distributor of audiobooks in the United States.  Audible created a service called "Audiobook Creation Exchange" or "ACX" (*see* www.acx.com) to provide a direct means by which publishers and authors could connect with producers and narrators to create audiobooks.  Compl. ¶ 22.  ACX makes it possible for authors to easily manage the narration, production, and publication of their works as audiobooks.  *Id*.  After those audiobooks are made available for sale through Audible, the ACX online dashboard allows authors to track sales of their audiobooks.  *Id*. ¶ 53.

Plaintiffs Golden Unicorn Enterprises, Inc. and Big Dog Books, LLC are ACX authors.  Compl. ¶ 22.  Golden Unicorn alleges that it is solely owned by Jan M. Bonthu, who has sold twenty-two audiobook titles through Audible since February 2014.  Compl. ¶ 15.  Big Dog Books alleges that it is solely owned and managed by Elizabeth Leone Noble, who has sold approximately forty-three audiobook titles through Audible since 2011.  Compl. ¶ 19.  Plaintiffs purport to represent a class of authors who either "sell their self-published Works in written form through a variety of channels" or control "closely held business entities … which registered the copyrights or to which those authors assigned or licensed the copyrights."  Compl.  ¶ 34.

When authors or publishers use the ACX service, they agree to either the Audiobook License and Distribution Agreement or the Book Posting Agreement (the "Agreements").  The Agreements set out the terms of the relationship, including the royalties that authors earn on the sales of their books.  Under the Agreements, royalty payments are calculated based on a certain percentage of Audible's revenue from audiobooks, net of returns, taxes, promotional discounts, and other contractually specified items.  Compl. ¶¶ 20, 40; *see also* Compl. Exs. A-D.  As the Complaint and its exhibits acknowledge, this royalty basis remains the same regardless of whether the author engages a narrator through ACX.  *See* Compl. ¶ 40 (citing Compl. Exs. A-D).

Contrary to what the Complaint suggests (*see* Compl. ¶¶ 55-56), Audible's longstanding return policy has been in place and publicly known for nearly a decade. *See, e.g.*, Peter Osnos, "How Amazon Became the King of Audiobooks," available at https://www.theatlantic.com/ business/archive/2013/07/how-amazon-became-the-king-of-audiobooks/277836/ (last visited Oct. 21, 2021).[1]  By offering Audible customers a flexible return window, Audible's return policy encourages users to take a chance on new authors, narrators, and stories that they might not otherwise experience, which helps to expand many authors' readership and potential customer base. *Id*.; *see also* Audible Return Policy, https://help.audible.com/s/article/can-i-return-exchange-my-book?language=en_US (last visited Oct. 21, 2021).[2]  This return policy is only available to customers in good standing.  Audible's policy makes clear that if a customer abuses their return privileges, those privileges can be revoked at any time. *See* Audible Return Policy.

Audible provides an online dashboard to allow ACX authors to track their sales; the dashboard displays authors' month-to-date sales figures net of returns because those figures are relevant to the calculation of royalties under the terms of the Agreements.  Compl. ¶ 54.  In October 2020, due to a data lag in the system, the ACX dashboard displayed authors' *gross* sales

---

[1] The above-cited *Atlantic* article is the proper subject of judicial notice to show that its content (*i.e.*, a description of Audible's return policy) was publicly available. *See In re Yukos Oil Co. Sec. Litig.*, No. 04 Civ. 5243(WHP), 2006 WL 3026024, at *21 n.10 (S.D.N.Y. Oct. 25, 2006) (finding published articles to be the proper subject of judicial notice on a motion to dismiss to show that information was publicly available); *see also Porrazzo v. Bumble Bee Foods, LLC*, 822 F.Supp.2d 406, (S.D.N.Y. 2011) ("[I]t is well-established that courts may take judicial notice of publicly available documents on a motion to dismiss.") (citations omitted).

[2] Audible's return policy is referenced and relied upon by Plaintiffs in the Complaint (Compl. ¶¶ 55-57) and therefore is the proper subject of judicial notice as it is integral to their claims. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (stating any documents attached, incorporated by reference, or heavily relied upon are the proper subjects of judicial notice).

numbers (*i.e.*, the number of audiobooks sold without the deduction of returns as provided in the Agreements) instead of *net* sales.  Compl. ¶¶54, 71.  The gross sales figures were not "secret," and the temporary display on the dashboard did not reveal a "subterfuge," because royalties under the Agreements are calculated on net sales after returns, not gross sales.

Plaintiffs assert three claims against Audible: breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment.  Compl. ¶¶ 98-100, 106-108, 111-113.  All three claims are based on the same core allegations that Audible engaged in wrongdoing by encouraging its customers to return audiobooks they purchased in exchange for other audiobooks to the detriment of the authors, and by calculating authors' royalty payments based on the number of sales net of these "illegitimate" returns.  *Id.*

Based on these claims, Plaintiffs seek the following relief:  (1) an accounting that shows the gross sales numbers, the number of audiobooks "exchanged" (which is undefined), and the royalty amounts that would have been paid if the royalty payments were based on gross sales rather than net sales; (2) compensatory damages; (3) disgorgement and restitution of Audible's profits from its alleged wrongful conduct; and (4) a permanent injunction barring Audible from calculating royalty payments net of "exchanges."

## LEGAL STANDARD

The Rule 12 standards are well-known and well-established.  To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is properly dismissed where, under applicable law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief."

*Twombly*, 550 U.S. at 558.  Although the Court must accept factual allegations in the complaint as true, "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555); *accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).

**ARGUMENT**

**I.     PLAINTIFFS' IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING CLAIM MUST BE DISMISSED AS DUPLICATIVE OF THEIR BREACH OF CONTRACT CLAIM.**

Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing fails as a matter of law because it is duplicative of the alleged breach of contract claims.  "New York law ... does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002); *see also Gitman v. Pearson Educ., Inc.*, No. 14 Civ. 8626(GBD), 2015 WL 5122564, at *5 (S.D.N.Y. Aug. 31, 2015) ("[A]n implied covenant claim is not distinct from a concurrently pled breach of contract claim unless it is based on different factual allegations.").

New York courts have "consistently dismissed claims for breach of the implied covenant of good faith as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach ... of an express provision of the underlying contract."  *ARI & Co. v. Regent Int'l Corp.*, 273 F. Supp. 2d 518, 522 (S.D.N.Y. 2003) (internal citation and quotations omitted); *see also The Youngbloods v. BMG Music*, No. 07 Civ. 2394 (GBD), 2008 WL 919617, at *1 (S.D.N.Y. March 28, 2008) (dismissing breach of implied covenant claim premised on defendant's alleged failure to properly calculate royalties, thereby allegedly interfering with plaintiff's right to receive the benefit of the contract, as duplicative of defendant's breach of contract claim); *Atlantis Info. Tech., GmbH v. CA, Inc.*, 485 F. Supp. 2d 224, 230-31 (E.D.N.Y.

2007) (dismissing as duplicative breach of implied covenant claim where licensor's allegation that licensee failed to pay royalties and provided false reports was the basis for both breach of contract and implied covenant claims).

Here, Plaintiffs' breach of contract and implied covenant claims are premised upon identical allegations.  As discussed above, Plaintiffs contend that Audible misapplied the "net of … returns" provision in the Agreements and underpaid authors by basing royalty calculations on revenue net of so-called "exchanges," rather than "returns."  Compl. ¶¶ 105-108.  That is rhetorical sleight-of-hand; Audible's return policies were well-publicized and well-known, and re-naming returns as "exchanges" does not change that fact.  Plaintiffs now object to Audible's flexible returns policy, but Plaintiffs were on notice of this policy for years and have continually entered into new Agreements with Audible for additional titles.

Nevertheless, for the purposes of this dismissal motion, whether Plaintiffs' breach of contract claim is ultimately viable is irrelevant.  The same allegations that underlie that claim (*see* Compl. ¶¶ 97-100) underlie Plaintiffs' breach of the implied covenant claim.  *See* Compl. ¶¶ 105-108.  As such, the implied covenant claim is duplicative and cannot survive. *See Cordell v. McGraw-Hill Companies, Inc.*, 525 F. App'x 22, 23 (2d Cir. 2013) (upholding district court's dismissal of plaintiff's good faith and fair dealing claim because "New York law ... does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based on the same facts, is also pled.").

The fact that Plaintiffs' breach of contract and implied covenant claims are redundant is bolstered by the fact that Plaintiffs seek the same undifferentiated relief for both claims. *See ARI & Co.,* 273 F. Supp. 2d at 522 (finding that "where the relief sought by the plaintiff in claiming a breach of the implied covenant of good faith is intrinsically tied to the damages

allegedly resulting from the breach of contract…, there is no separate and distinct wrong that would give rise to an independent claim") (internal quotation marks and citation omitted).  The implied covenant claim must be dismissed as a matter of law.

## II.    PLAINTIFFS' UNJUST ENRICHMENT CLAIM MUST BE DISMISSED BECAUSE THE CONTRACTS ARE VALID AND ENFORCEABLE.

A court must dismiss an unjust enrichment claim "where there is a valid and enforceable contract between the parties, and the subject matter of the unjust enrichment claim is covered by the contract."  *ImagePoint, Inc. v. JPMorgan Chase Bank, Nat. Ass'n*, 27 F. Supp. 3d 494, 516 (S.D.N.Y. 2014) (internal quotation marks omitted); *see also Maryland Cas. Co. v. W.R. Grace & Co.*, 218 F.3d 204, 212 (2d Cir. 2000) ("The notion of unjust enrichment applies where there is no contract between the parties ….");  *Opternative, Inc. v. Jand, Inc.*, No. 17 Civ. 6936 (JFK), 2018 WL 3747171, at *7 (S.D.N.Y. Aug. 7, 2018) ("Under New York law, the existence of a valid contract typically bars recovery based on the quasi-contract theory of unjust enrichment."); *Hartford Fire Ins. Co. v. Federated Dep't Stores, Inc.*, 723 F. Supp. 976, 994 (S.D.N.Y. 1989) ("Unjust enrichment is designed 'to prevent one person who has obtained a benefit from another without ever entering into a contract with that person from unjustly enriching himself at the other person's expense.'"); *Learning Annex Holdings, LLC v. Rich Global, LLC*, No. 09 Civ. 4432(SAS), 2011 WL 3586138, at *2 n.11 (S.D.N.Y. Aug. 12, 2011) (citing *New Windsor Vol. Amb. Corps. Inc. v. Meyers*, 442 F.3d 101, 118 (2d Cir. 2006)).

It is undisputed that the Agreements between Plaintiffs and Audible are valid and enforceable.  *See* Compl. ¶ 96 ("These mutual exchanges of promises were valid and binding contracts.").  Indeed, Plaintiffs assert breaches of their Agreements as their first cause of action. *Id*. ¶ 99.  And the Agreements unquestionably govern the subject matter of this dispute, *i.e.*, whether Audible paid authors the royalties to which they were entitled under the applicable

contract.  *See e.g.*, *Atlantis Info. Tech.*, 485 F. Supp. 2d at 235 (dismissing the unjust enrichment claim based on plaintiff's own admission that a valid and enforceable contract governed the calculation of royalties).  Again, the fact that Plaintiffs seek the same undifferentiated relief for both claims further confirms that they are redundant.  *See Professional Merchant Advance Capital, LLC v. C Care Services, LLC*, No. 13–CV–6562 (RJS), 2015 WL 4392081, at *6 (S.D.N.Y. July 15, 2015) (noting that a claim for unjust enrichment is duplicative of a breach of contract claim when there is an enforceable agreement and the same damages are sought for both claims).  Accordingly, Plaintiffs' unjust enrichment claim must be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' breach of the implied covenant of good faith and fair dealing and unjust enrichment claims against Audible with prejudice and grant such other and further relief as it deems appropriate.

Dated:  November 1, 2021                              Respectfully submitted,

By:   */s/ Kathryn J. Fritz*
Kathryn J. Fritz (NY Bar No. 2078483)
email:  kfritz@fenwick.com
**FENWICK & WEST LLP**
902 Broadway, Suite 14
New York, NY  10010
Telephone:  (212) 430-2600
Facsimile:  (650) 938-5200

555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:  (415) 875-2300
Facsimile:  (415) 281-1350

*Attorney for Defendant Audible, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who consented to electronic service are being

served with a copy of this document via CM/ECF per Local Rule CV-5 on November 1, 2021.


*/s/ Kathryn J. Fritz*
Kathryn J. Fritz