

1191 Second Avenue          206.389.4510
10th Floor                  Fenwick.com
Seattle, WA 98101

Brian D. Buckley
BBuckley@fenwick.com  |  206.389.4515

January 6, 2023

**VIA ECF**
The Honorable Jesse M. Furman

Re:     Golden Unicorn Enterprises, Inc. et al. v. Audible, Inc., Case No. 1:21-cv-07059-JMF

Your Honor:

Pursuant to Section 7(C) of the Court's Individual Rules and Practices in Civil Cases, Audible respectfully seeks leave for (1) Plaintiffs to file a redacted version of their Memorandum in Support of their Motion for Class Certification, and (2) Plaintiffs to file certain exhibits from their Motion for Class Certification under seal.  *See* Dkt. Nos. 131, 132.

While both common law and the First Amendment create a presumption of public access in "judicial documents," this presumption is not absolute.  *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006).  A document "may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest."  *Id.* at 120 (quoting *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)).  A court must balance competing factors that weigh against the presumption of access, including business secrecy, privacy interests, and the nature and degree of injury that would result if those interests are not protected.  *Id.* at 119-20; *see also Kewazinga Corp. v. Microsoft Corp.*, No. 1:18-cv-4500 (GHW), 2021 WL 1222122, at *4 (S.D.N.Y. Mar. 31, 2021); *Lexington Furniture Indus., Inc. v. Lexington Co.*, AB, No. 19-CV-6239 (PKC), 2021 WL 1143694, at *2 (S.D.N.Y. Mar. 24, 2021).

Audible seeks to file under seal or redact two types of confidential information:
(1) documents or information that contain sensitive business information, or information that could cause competitive harm; and (2) personal information of non-parties that does not bear on Plaintiffs' class certification motion.

The need to protect "the confidentiality of … sensitive business information may be a legitimate basis to rebut the public's presumption of access to judicial documents." *Lexington Furniture Indus.*, 2021 WL 1143694, at *2 (collecting cases).  And "[c]ourts commonly find that documents that contain trade secrets, confidential research and development information, marketing plans, revenue information, pricing information, and the like satisfy the sealing standard."  *Kewazinga*, 2021 WL 1222122, at *3 (quoting *Rensselaer Polytechnic Inst. v. Amazon.com, Inc.*, No. 1:18-cv-00549 (BKS/CFH), 2019 WL 2918026, at *2 (N.D.N.Y. June 18, 2019)).  Accordingly, "confidential 'commercial information' of a business—including trade secrets, confidential research, internal business documents and information about a business's operations—has been recognized repeatedly

Page 2

as a proper subject for sealing." *CSL Silicones, Inc. v. Midsun Grp. Inc.*, No. 3:14-CV-1897 (CSH), 2017 WL 4750701, at *3 (D. Conn. July 12, 2017) (collecting cases).

For example, in *Kewazinga*, the court allowed redaction and sealing of "confidential information about Microsoft's business models, including details of Microsoft's sources of revenue and the amounts of its revenue and sales; quantitative details about Microsoft's user base for certain offerings; quantitative details about usage of specific product features; specific revenue amounts from certain offerings; and information regarding settlement agreements with third parties, which include confidentiality obligations to those third parties." 2021 WL 1222122, at *6. The court explained that "if that information were to be disclosed, it could indeed harm Microsoft or advantage its competitors." *Id.* at *6 (citing *United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995)); *see Amodeo*, 71 F.3d 1044, 1051 ("Commercial competitors seeking an advantage over rivals need not be indulged in the name of monitoring the courts ….").

Audible seeks to redact or seal documents containing confidential business information, including Audible's business strategies, internal projects, internal analyses, details about Audible's financial processes and information, and Audible's agreements with non-parties to the litigation. Such information is the type of sensitive business information that, if open to the public, could potentially cause competitive harm. *See Skyline Steel, LLC v. PilePro, LLC*, 101 F. Supp. 3d 394, 412-13 (S.D.N.Y. 2015) (granting Skyline's leave to file exhibits consisting "largely of 'highly confidential sales information, including pricing information,' which is not available to the public, and emails revealing confidential negotiations between Skyline and one of its customers" (citation omitted)), *reconsideration granted in part on other grounds*, No. 13-CV-8171 (JMF), 2015 WL 3739276 (S.D.N.Y. June 15, 2015).

- **Plaintiffs' Motion for Class Certification** (Dkt. 132): Audible seeks narrow redactions of Plaintiffs' motion, specifically the number of ACX creators, information used in Audible's royalty calculations, returns percentages, and internal financial information regarding returns. These redactions protect confidential, sensitive business information that, if made public, could threaten competitive harm.

- **Audible Deposition Transcripts** (Exs. K, L, M, O, and W; Dkts. 132-11, 132-12, 132-13, 132-15, and 132-23): Audible also seeks narrow redactions of transcripts of deposition testimony of Audible's witnesses that contain confidential, sensitive business information that, if made public, could threaten competitive harm. Moreover, most of the proposed redactions are of information that does not bear on, and is not referenced in, Plaintiffs' class certification motion. *See Kewazinga*, 2021 WL 1222122, at *4 (explaining that "certain of the information that is sought to be redacted carries less weight, because it does not bear directly on the analysis conducted by the Court in its resolution of the motions"); *In re SunEdison, Inc. Sec. Litig.*, No. 16-CV-7917 (PKC), 2019 WL 126069, at *2 (S.D.N.Y. Jan. 7, 2019) ("The

specific allocation of Preferred Shares between various direct purchasers was not relevant to the class certification decision, and the presumption of access is low. The motion to seal is granted as to Exhibit 17.").

- o **Deposition Testimony of Diana Dapito** (Ex. K; Dkt. 132-11): The proposed redactions include internal strategy discussions, sensitive information about agreements with non-parties to this litigation, internal projects, and internal financial information.  Plaintiffs do not rely on this information in their class certification motion, and it is not needed to resolve their motion.

- o **Deposition Testimony of Ryan Eland** (Ex. L; Dkt. 132-12): The proposed redactions include internal information about one of Audible's membership programs that could threaten competitive harm if made public, internal information about returns processing, and information pertaining to internal business decisions.  Audible does not seek redactions of the corresponding sentences in the class certification motion, just the testimony itself.

- o **Deposition Testimony of Victor Emenuga** (Ex. M; Dkt. 132-13): The proposed redactions include internal information about Audible's financial systems and royalties' calculations.  Other than an Allocation Factor percentage figure, Plaintiffs did not rely on this information in their class certification motion.

- o **Deposition Testimony of Scott Bartel** (Ex. O; Dkt. 132-15): Audible seeks to redact the number of authors that receive statements from Audible.

- o **Deposition Testimony of Josias Caminero** (Ex. W; Dkt. 132-23): The proposed redactions include the number of ACX users receiving payments from Audible and a description of an internal Audible financial document.

- **Reports of Plaintiffs' Proposed Experts** (Exs. P and T; Dkts. 132-16 and 132-20): Audible seeks narrow redactions from the reports of Plaintiffs' proposed experts. The redactions contain highly sensitive information from Audible's documents and depositions.

- o **Report of Thad McIlroy** (Ex. P; Dkt. 132-16): Audible's proposed redactions include the number of ACX creators, discussions about internal strategy and analysis, confidential information about publishers that are not parties to this lawsuit, and internal information about Audible's royalties' calculations.

- o **Report of Joseph Egan** (Ex. T; Dkt. 132-20): Audible's proposed redactions are limited to confidential information about Audible's internal financial systems, processes, and calculations, including information about royalty earners that are not parties to this litigation.

Page 4

- **Internal Strategy, Analysis, and Financial Documents** (Exs. Q, R, S, U, V, BB, CC, FF): Audible seeks to seal the following Audible documents.  These documents, all produced as highly confidential, contain sensitive internal strategy, analysis, and financial information that could cause competitive harm.  In many cases, the information in these documents is not relevant to Plaintiffs' motion.  *See Kewazinga*, 2021 WL 1222122, at *4; *In re SunEdison*, 2019 WL 126069, at *2.

  - **Great Listen Guarantee Strategy Document** (Ex. Q; Dkt. 132-17): This is a highly sensitive internal strategy and analysis document about Audible's Great Listen Guarantee, including market research, business impacts, and potential recommendations.  Plaintiffs rely on this document only to generally describe the Great Listen Guarantee (Mot. at 5), and therefore, this document is not necessary to resolve Plaintiffs' motion.

  - **Internal Email Regarding Returns** (Ex. R; Dkt. 132-18): This email contains a detailed internal analysis about Audible's returns, including specific returns numbers and cost projections.  Plaintiffs rely on this highly sensitive document only for the specific returns figures in the background section of their motion.  *See* Mot. at 6.

  - **Easy Exchanges Internal Document** (Ex. S; Dkt. 132-19): This is a highly sensitive internal analysis of Audible's returns program, including proposals for changes to the policy.  It contains detailed and sensitive data about global costs, Audible's member base, purchases, and returns.  Plaintiffs rely on this highly sensitive document only for specific returns figures.  *See* Mot. at 6.

  - **Internal Financial Analysis and Figures** (Exs. U and V; Dkts. 132-21 and 132-22): These documents contain highly sensitive sales, returns, and royalties data that could threaten significant competitive harm if made public.  Plaintiffs rely on one figure from Exhibit U in the background section of their motion, *see* Mot. at 6, and otherwise do not discuss these documents.

  - **Internal Email Regarding ACX Updates** (Ex. BB; Dkt. 132-28): This document contains internal ACX updates, a reference to non-named parties to this case, and a discussion of ACX projects unrelated to this case.  Plaintiffs cite this document only to describe the October 2020 software error in the background section of their motion.  *See* Mot. at 7.  This exhibit is not necessary to support even that sentence, as Plaintiffs cite another exhibit (Ex. AA; Mot. 7 at n.31) for which Audible seeks to redact only the email addresses.  Ex. BB was redacted when the document was produced to redact the names of non-named parties to this litigation.  If the Court would like to see the unredacted document, Audible can provide it.

Page 5

- o **Internal Document Regarding Creator Communications** (Ex. CC; Dkt. 132-29): This internal, draft document analyzes creator reactions to the October 2020 software error and proposes potential responses.  It contains draft communications, including internal edits and comments, and was used in Plaintiffs' motion only to provide the number of ACX creators.  *See* Mot. at 9.

- o **Internal Email Regarding ACX Updates** (Ex. FF; Dkt. 132-33): This internal email exchange contains sensitive communications about measures taken related to returns and remaining tasks, revealing sensitive, confidential internal processes.  Plaintiffs cite this exhibit only when discussing the ACX dashboard.  *See* Mot. at 15.  Exhibit X (Dkt. 132-24), also cited by Plaintiffs, provides this information, and therefore Ex. FF is not necessary even for the sentence it purports to support.

- • **Information About Non-Parties to the Litigation** (Exs. X, Z and AA; Dkts. 132-24, 132-26, and 132-27): Audible seeks to redact information about non-parties to this litigation.  This includes customer information, authors, their titles, the names of Audible employees, and Audible email addresses.  *See Kewazinga*, 2021 WL 1222122, at *5 (granting request to redact employee email addresses "[b]ecause of the significant privacy interests of non-parties, and the lack of relevance of this information to any issue in this litigation"); *In re SunEdison*, 2019 WL 126069, at *2 (allowing redaction of "names and contact information in various e-mails" when "[t]he public interest in the names of the specific senders and recipients in these e-mails is low, as is the identities of certain entities referenced within the e-mails").

  - o **Dashboard Before and After Demonstration** (Ex. X; Dkt. 132-24): Plaintiffs cite this document to describe the ACX dashboard.  Audible seeks to redact the Audiobook titles, author names, and book release dates.  The authors are not parties, and their information does not bear on class certification.

  - o **Customer Service Transcript** (Ex. Z; Ex. 132-26): Personally identifiable information about the customer in this transcript was redacted when the document was produced.  Audible seeks to maintain this redaction, as the customer's identity is both private and unrelated to this motion.  If the Court would like to see the unredacted document, Audible can provide it.

  - o **Internal Email Regarding Reactive Communications** (Ex. AA; Dkt. 132-27): Audible seeks to redact Audible employees' names and email addresses, which are irrelevant to Plaintiffs' class certification motion.

We are happy to provide any additional information that may be useful to the Court.

Page 6

Respectfully,

FENWICK & WEST LLP

*/s/ Brian D. Buckley*

Brian D. Buckley

cc: All counsel of record (via ECF)

The Motion to Seal is granted temporarily.  Any opposition to the Motion shall be filed by **January 13, 2023.**  The Court will assess whether the keep the material at issue sealed or redacted on a permanent basis when deciding the underlying motions.  The Clerk of Court is directed to terminate ECF No. 144.

SO ORDERED.

January 9, 2023