UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GOLDEN UNICORN ENTERPRISES, Inc., and BIG DOG BOOKS, LLC, *on behalf of themselves and all those similarly situated*,<br><br>　　　　　　　　　Plaintiffs,<br>vs.<br><br>AUDIBLE, Inc.<br><br>　　　　　　　　　Defendant. | Case No: 1:21-CV-07059-JMF |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO EXCLUDE CERTAIN OPINIONS OF JULI SAITZ**

i

**TABLE OF CONTENTS**

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................... 1

LEGAL STANDARDS ……………………………………………………………………….. 2

ARGUMENT ..................................................................................................................................... 4

   I. The Court Should Exclude Ms. Saitz's Opinion that Audible's Policy on Returns and Exchanges Benefited ACX Authors, Because it Constitutes Affirmative Testimony Outside the Scope of Rebuttal ......................................................................................... 4

   II. The Court Should Strike and Exclude Ms. Saitz's Opinion that the Great Listen Guarantee Benefited ACX Authors, Because It Is Unsubstantiated ................................... 6

   III. The Court Should Strike and Exclude Ms. Saitz's Opinions That Purport to Interpret The Contract ……....................................................................................................... 7

CONCLUSION ................................................................................................................................ 7

# TABLE OF AUTHORITIES

**Cases**

*1-800 Contacts, Inc. v. Lens.com, Inc.*, 755 F. Supp. 2d 1151 (D. Utah 2010) ………………….. 4

*Brink v. Union Carbide Corp.*, 41 F.Supp.2d 402 (S.D.N.Y. 1997) ……………………………… 2

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) ……...………………….. 1

*Edmondson v. RCI Hosp. Holdings, Inc.*, No. 16-CV-2242-VEC, 2020 WL 1503452 (S.D.N.Y. Mar. 30, 2020) ………………………………………………………………..…… 2, 6

*Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, No. 12-CV-7372-LJL, 2020 WL 3582029 (S.D.N.Y. July 1, 2020) ……………………………………………………………….…..... 2, 6

*In re Mirena IUD Prod. Liab. Litig.*, 169 F. Supp. 3d 396 (S.D.N.Y. 2016) …………………… 2–3

*In re Mirena IUS Levonorgestrel-Related Prod. Liab. Litig.*, 341 F. Supp. 3d 213 (S.D.N.Y. 2018) ……………………………………………………………………………….. 6

*In re Pfizer Inc. Sec. Litig.*, 819 F.3d 642 (2d Cir. 2016) ……………………………...…………… 2–3

*International Business Machines Corp. v. Fasco Indus., Inc.*, No. C-93-20326, 1995 WL 115421 (N.D. Cal. Mar. 15, 1995) …………………………………………………………… 4

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) …………...…….…….…………….. 1–2

*Miller Marine Servs., Inc. v. Travelers Prop. Cas. Ins. Co.*, 197 F. App'x 62 (2d Cir. 2006) …………………………………………………………………………………….. 2–3, 7

*United States v. Dukagjini*, 326 F.3d 45 (2d Cir. 2003) ………………………..……………… 3, 7

**Statutes and Court Rules**

FED. R. EVID., RULE 702 ……………………………………………………………….… 1–3, 7

## INTRODUCTION AND SUMMARY OF ARGUMENT

Defendant Audible, Inc., retained Juli Saitz to rebut the damage estimates, and models for estimating damages, submitted by Plaintiffs' expert witness Joseph Egan. *See* Expert Rept. of Juli Saitz ("Saitz Rept.," Exh. A) ¶ 1. Ms. Saitz's report and proffered testimony go beyond the purpose for which she was proffered—and far beyond anything substantiated by evidence—by (1) opining that Plaintiffs and Class members benefited from Audible's practically unlimited returns policy (known as the Great Listen Guarantee ("GLG")), and (2) making assertions about proper interpretation of the contract between Audible and ACX authors.

Specifically, first, Ms. Saitz asserts that the GLG benefited Plaintiffs and Class Members by increasing Audible's revenue and, *ipse dixit*, that the GLG **increased** royalty income for authors who used Audible's ACX platform—even though every time an audiobook was returned or exchanged under the GLG, royalty income was taken from an author. *See* Saitz Rept. ¶¶ 67–71. Ms. Saitz was not presented to offer this opinion. Worse still, Ms. Saitz's report cites no data to support the assertion, and she testified that the opinion is an assumption for which she has conducted no analysis or investigation. *See* Saitz Dep. 198:13–216:7 (Exh. B). Second, Ms. Saitz offers an opinion on the proper construction of "net sales" in the contract between Audible and ACX authors. *See, e.g.*, Saitz Rept. ¶¶ 24, 56. Ms. Saitz is not qualified to give this opinion, nor has she been proffered to do so.

Because these opinions are based on insufficient facts and data, because they are not the product of any reliable principles or methods, and because they reach beyond the purposes for which Ms. Saitz has been presented as an expert, they should be excluded. *See* FED. RULE EVID. 702; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

1

## LEGAL STANDARDS

Opinion testimony by a proffered expert witness is admissible if the expert's "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," if "the testimony is based on sufficient facts or data," if "the testimony is the product of reliable principles or methods," and if "the expert has reliable applied the principles and methods to the facts of the case." FED. R. EVID. 702. The trial court acts as gatekeeper to ensure that expert testimony is "not only relevant, but reliable." *Kumho Tire*, 526 U.S. at 147 (quoting *Daubert*, 509 U.S. at 589). The proponent of the expert testimony must establish the requirements of Rule 702. *See In re Pfizer Inc. Sec. Litig.*, 819 F.3d 642, 658 (2d Cir. 2016).

Expert analysis does not "help the trier of fact" if it is the sort of mere analysis that laypeople can and do perform regularly. *Edmondson v. RCI Hosp. Holdings, Inc.*, No. 16-CV-2242-VEC, 2020 WL 1503452, at *6 (S.D.N.Y. Mar. 30, 2020) (citing *United States v. Mulder*, 273 F.3d 91, 101 (2d Cir. 2001)); *see Brink v. Union Carbide Corp.*, 41 F.Supp.2d 402, 405 (S.D.N.Y. 1997) (Owen. J) (excluding expert witness's affidavit on the existence of age discrimination because "a lay jury is capable of understanding the facts and issues here without the aid of an expert"). Simple "arithmetic" is such a form of analysis that is inadmissible under Rule 702. *Edmonson*, 2020 WL 1503452, at *6 (citing *United States v. Sepulveda-Hernandez*, 752 F.3d 22, 34 (1st Cir. 2014)); *see also Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, No. 12-CV-7372-LJL, 2020 WL 3582029, at *5 (S.D.N.Y. July 1, 2020) (ordering *voir dire* to determine whether an expert analysis was inadmissible "arithmetic" within laypeople's understanding).

Nor may an expert "supplant the role of counsel in making argument at trial, [or] the role of the jury in interpreting the evidence." *In re Mirena IUD Prod. Liab. Litig.*, 169 F. Supp. 3d 396, 467 (S.D.N.Y. 2016) (Seibel, J.) (quoting *In re Rezulin Prods. Liab. Litig*., 309 F. Supp. 2d 531, 541 (S.D.N.Y. 2004) (Kaplan, J.). A court should exclude an expert's legal opinion on proper

construction of a contract. *See Miller Marine Servs., Inc. v. Travelers Prop. Cas. Ins. Co.*, 197 F. App'x 62, 64 (2d Cir. 2006) (excluding expert who opined that a particular loss was a "covered occurrence" under a disputed insurance policy) (citing *DiBella v. Hopkins*, 403 F.3d 102, 121 (2d Cir. 2005)); *see also Mirena IUD*, 169 F. Supp. At 567 ("[A]n expert's testimony on issues of law is inadmissible.").

When an otherwise qualified expert is no longer applying her experience and a reliable methodology, her testimony must be excluded. *See United States v. Dukagjini*, 326 F.3d 45, 54 (2d Cir. 2003). If any opinion of a proposed expert rests on insufficient data or unreliable methodology, the district court must exclude that opinion, regardless of the admissibility of other opinions offered by that expert. *See, e.g.*, *In re Pfizer Inc. Sec. Litig.*, 819 F.3d 642, 662 (2d Cir. 2016) (finding error because "the court should have prevented Fischel from testifying about the Proportional Reduction and otherwise permitted him to offer his opinion about loss causation and damages").

Rebuttal expert testimony is admissible when "intended solely to contradict or rebut evidence on the same subject matter identified" by an initial expert witness. *TC Sys. Inc. v. Town of Colonie*, 213 F. Supp. 2d 171, 179 (N.D.N.Y. 2002) (quoting FED. R. CIV. P. 26(a)(2)(C)(ii)). The testimony must be limited to "new unforeseen facts brought out in the other side's case." *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 685 (5th Cir. 1991). If the purpose of expert testimony is to "contradict an expected and anticipated portion of the other party's case-in-chief, then the witness is not a rebuttal witness or anything analogous to one." *In re Apex Oil Co.*, 958 F.2d 243, 245 (8th Cir. 1992)). A report proffered as rebuttal but that puts forth affirmative opinions "must be stricken" unless the failure to designate the affirmative opinions was substantially justified or harmless. *R&O Constr. Co. v. Rox Pro Int'l Grp., Ltd.*, No. 2:09-cv-01749, 2011 WL 2923703, at

*4–6 (D. Nev. July 18, 2011). Striking a report may be total, or partial: any portion of a rebuttal expert's report that does not refute an "unforeseen theory" should be stricken, even if the remainder of the report is admissible. *See, e.g.*, *In re Toy Asbestos*, No. 19-cv-00325, 2021 WL 1056552, at *3–4 (N.D. Cal. Mar. 19, 2021) ("The Court finds that only these limited two paragraphs are proper rebuttal. The Court therefore [strikes] the remainder of Dr. Staggs' rebuttal report. And because Dr. Staggs is designated solely as a rebuttal expert, his testimony at trial is limited.").

## ARGUMENT

I.  **The Court Should Exclude Ms. Saitz's Opinion that Audible's Policy on Returns and Exchanges Benefited ACX Authors, Because it Constitutes Affirmative Testimony Outside the Scope of Rebuttal.**

Under the standards laid out in *Cates* and *R&O Construction Company*, portions of Ms. Saitz's report must be stricken. Audible proffered Ms. Saitz as a rebuttal expert to Plaintiffs' expert Joseph Egan. Saitz Rept. ¶ 1; *see* ECF No. 109. As such, it is improper for Ms. Saitz to go beyond contradicting or rebutting Mr. Egan by expressing an affirmative opinion that Audible's GLG ***benefits*** class members. *See, e.g.*, Saitz Rept. ¶¶ 33, 67, 69–71 (*e.g.*, asserting that, in 2019 and 2020, "both the total royalties for ACX authors and the average royalties per ACX author ***also increased***. In other words, Plaintiffs and other authors did not make less money when the use of the return benefit increased—they made ***more***." (at ¶ 70 (emphasis in original))).[1] Nor was Audible's's failure to designate the affirmative opinions justified or harmless. Audible has not asserted any reason why the extent of Ms. Saitz's opinions could not be disclosed on the deadlines

---

[1] *See also, e.g.*, *1-800 Contacts, Inc. v. Lens.com, Inc.*, 755 F. Supp. 2d 1151, 1167 (D. Utah 2010) (affirming that rebuttal report is not proper place for presenting new argument); *International Business Machines Corp. v. Fasco Indus., Inc.*, No. C-93-20326, 1995 WL 115421, at *3 (N.D. Cal. Mar. 15, 1995) (cautioning that rebuttal experts "cannot put forth their own theories; they must restrict their testimony to attacking the theories offered by the adversary's experts").

set by the Court, which would have provided Plaintiffs with the opportunity to proffer an expert to rebut the new opinions.[2]

Accordingly, Plaintiffs ask the Court to strike the portions of Ms. Saitz's report that express affirmative opinions, and, if she is permitted to testify at trial, then to instruct the witness not to repeat her deposition testimony regarding those affirmative opinions.

### II. The Court Should Strike And Exclude Ms. Saitz's Opinion That The Great Listen Guarantee Benefited ACX Authors, Because it is Unsubstantiated.

Ms. Saitz, in her report, asserts that ACX authors benefited from Audible's lax return policy. Saitz Rept. ¶¶ 33, 69–71. But she cites no analysis to support this assertion, *see id.*; Saitz Dep. 198:13–216:7, and admitted in deposition that she has not attempted to perform any such analysis:

> Q. So are you saying that all of the sales increases are caused by the liberal return policy?
>
> A. I did not say that.
>
> Q. Some of it has to do with the popularity of the authors in their books, doesn't it?
>
> A. Certainly.
>
> Q. Okay. And promotion of the books?
>
> A. Yes.
>
> Q. Any number of factors, and there's no way to tell what effect that the return policy, liberal return policy, has on the increase in sales; is that right?
>
> A. I don't -- no, I disagree that there's no way to tell. You could do some statistical analyses. You could look at research. You could potentially do surveys.
>
> Q. Have you done that?
>
> A. I have not done that.

---

[2] The Court-ordered deadline for serving reports summarizing affirmative damages testimony was December 15, 2022. ECF No. 109. Plaintiffs served Mr. Egan's report on Audible on that date. Audible did not serve any affirmative damages-related report on Plaintiffs on or before that date. Audible served Ms. Saitz's report on Plaintiffs on January 19, 2023, the deadline for serving rebuttal damages reports. See Saitz Rept. 1; ECF No. 109.

5

*Id.* 203:10–204:4; *see also id.* at 200:4–23, 213:21–214:16. Instead, Ms. Saitz pointed to "correlation" of increases in (1) Audible's net revenue, (2) the values of returns and exchanges, and (3) per-author royalties paid during the class period. *Id.* 200:19–23 ("I've not done that calculation, but I can tell you as an accountant, in knowing basic—basic arithmetic that that's absolutely true.")

To begin, Ms. Saitz's opinion fails at the threshold on her own admission that it is basic "arithmetic," *see id.*, because such opinion does not assist the trier of fact, *see Edmonson*, 2020 WL 1503452, at *6; *Fin. Guar. Ins. Co.*, 2020 WL 3582029, at *5; *see also Brink*, 41 F.Supp.2d at 405. But, even if that were not the case, Ms. Saitz's assertions about statistical relationships among Audible's revenue, values of returns and exchanges, and Authors' incomes are not the "product of reliable principles or methods." *See* FED. R. EVID. 702. In fact, they are not the product of ***any*** principles or methods; Ms. Saitz admitted that she did nothing to determine whether there was ***actually*** a benefit to authors as a result of the GLG. *See, e.g.*, Saitz Dep. 200:17–23, 257:13–24.

Further, whatever "correlation" may exist among Audible's revenue, the values of returns and exchanges, and per-author royalties, statisticians and courts alike (as well as Ms. Saitz) recognize that correlation is not causation. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 486–94 (S.D.N.Y. 2018) (Buchwald, J.) (excluding testimony from securities-markets expert who found correlation between London Inter-Bank Offered Rate and Eurodollar futures contracts); *In re Mirena IUS Levonorgestrel-Related Prod. Liab. Litig.*, 341 F. Supp. 3d 213, 238–39, 285–86 (S.D.N.Y. 2018) (Engelmayer, J.) (excluding proffered experts whose "central source material" was studies finding only correlation—not causation—between synthetic hormone and idiopathic cranial hypertension), *aff'd*, 982 F.3d 113 (2d Cir. 2020). Ms.

6

Saitz's references to "correlation" among Audible's revenue, the values of audiobooks returned and exchanged, and authors' income are similarly insufficient to establish any sort of causal relationship.

Based on the foregoing, Ms. Saitz's "correlation" opinions cannot "help the trier of fact to understand the evidence or to determine a fact in issue," *Edmondson*, *supra*, 2020 WL 1503452, at *6, and should be excluded from consideration at all stages of this litigation, including class certification, summary judgment, and trial.[3]

### III. The Court Should Strike and Exclude Ms. Saitz's Opinions that Purport to Interpret the Contract.

At several points in her report, Ms. Saitz purports to interpret the contract between Audible and ACX authors. She goes so far as to opine on the central issue underlying Plaintiffs' breach-of-contract claim: "[I]n determining 'net sales' under the Contract, it is appropriate to deduct ***all returns***." Saitz Rept. ¶ 56 (emphasis added). Such an opinion is inadmissible, first, because it attempts to usurp the Court's authority to construe the contract at issue, *see Miller Marine*, 197 F. App'x at 64, and, second, because in submitting it she is opining outside of her qualifications and beyond the purposes for which she was proffered, *see Dukagjini*, 326 F.3d at 54.[4]

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask that the Court strike and exclude Juli Saitz's opinions that ACX authors benefited from Audible's GLG and her attempts to interpret the contract at issue in this litigation.

This the 6th day of March 2023.

---

[3] Such statements are highlighted in yellow and rendered in strikethrough font in Ms. Saitz's report provided separately as Exhibit C and in excerpts of Ms. Saitz's deposition transcript provided separately as Exhibit D.

[4] Such statements are highlighted in orange and rendered in strikethrough font in Ms. Saitz's report provided separately as Exhibit C and in portions of Ms. Saitz's deposition transcript provided separately as Exhibit D.

**LAW OFFICES OF JAMES SCOTT FARRIN**

By: */s/ Gary W. Jackson*
Gary W. Jackson (N.Y. Bar No. 2013779)
Chris Bagley (Admitted *pro hac vice*)
555 S. Mangum Street, Suite 800
Durham, North Carolina 27701
Telephone: (919) 226-1913
Facsimile: (984) 227-6962
gjackson@farrin.com
cbagley@farrin.com

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**

By: */s/ Mitchell Breit*
Mitchell Breit (N.Y. Bar No. 2337954)
Leland Belew (Admitted *pro hac vice*)
405 East 50th Street
New York, New York 10022
Telephone: (212) 594-5300
mbreit@milberg.com
lbelew@milberg.com

**RICHMAN LAW & POLICY**

By: */s/ P. Renée Wicklund*
P. Renée Wicklund (Admitted *pro hac vice*)
535 Mission Street
San Francisco, CA 94105
Telephone: (415) 259-5688
rwicklund@richmanlawpolicy.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

    I, Gary W. Jackson, certify that I filed the foregoing document with the Court's Electronic Case Filing ("ECF") system on March 6, 2023. This filing via ECF automatically generates a Notice of Electronic Filing ("NEF"), which constitutes proof of service of the filed document upon all registered users. Service has thus been accomplished through by NEF for all parties and counsel who are registered users of the Court's ECF system.

    This the 6th day of March 2023.

                                              */s/ Gary W. Jackson*
                                              Gary W. Jackson