```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                                   :
GOLDEN UNICORN ENTERPRISES, INC. et al., on                        :
behalf of themselves and all those similarly situated,             :
                                                                   :
                              Plaintiffs,        :        21-CV-7059 (JMF)
                                                                   :
              -v-                                :        OPINION AND ORDER
                                                                   :
AUDIBLE, INC.,                                                     :
                                                                   :
                              Defendant.         :
                                                                   :
-------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

Plaintiffs Golden Unicorn Enterprises, Inc. and Big Dog Books, LLC (together, "Plaintiffs") are run by independent, self-published authors. Both companies contracted with Defendant Audible, Inc. ("Audible"), a leading provider of audiobooks, to license and distribute audiobooks. In October 2020, Plaintiffs (and other self-publishing authors) discovered that Audible was deducting from their royalties audiobooks that customers had returned, including, in some instances, audiobooks returned long after they had been purchased and listened to in full. This lawsuit followed. Following the completion of discovery, the parties filed a slew of motions, including a motion by Audible for summary judgment on Plaintiffs' two remaining claims, a claim for breach of contract and a claim for breach of the implied covenant of good faith and fair dealing. In an Opinion and Order dated January 14, 2023, familiarity with which is presumed, the Court granted summary judgement to Audible on Plaintiffs' breach-of-contract claim and on one of Plaintiffs' two theories of liability for breach of the implied covenant (namely, their theory that Audible had "surreptitiously" deducted royalties). *See Golden Unicorn Enterprises, Inc. v. Audible, Inc.*, — F. Supp. 3d, No. 21-CV-7059 (JMF), 2023 WL

4561718 (S.D.N.Y. July 17, 2023) (ECF No. 280).  The Court also granted Audible's motion to preclude the testimony of Plaintiffs' damages expert.  *See id.* at *6-8.  The Court reserved judgment on the remainder of the parties' motions, however, pending supplemental briefing on whether Plaintiffs' have a viable theory of damages attributable to Audible's alleged breach of the implied covenant by encouraging customers to return their audiobooks.  *See id.* at *9-10.

Having reviewed the parties' supplemental briefing, the Court concludes that Audible is entitled to summary judgment on Plaintiffs' remaining theory of breach as well.  In brief, Plaintiffs fail to identify any means, let alone evidence, to identify "legitimate" returns from returns that Audible "encouraged" in breach of the implied covenant.  In other words, Plaintiffs cannot prove two essential elements of their remaining claim: causation and damages.  Accordingly, and for the reasons stated below, Audible's motion for summary judgment is granted in its entirety.  The parties' other substantive motions are therefore denied as moot.

## BACKGROUND

The Court presumes familiarity with its prior Opinion and Order and, thus, provides only a brief background here.  Audible, a leading provider of audiobook content, offers a program called ACX, which allows independent authors to produce and publish audiobooks.  ECF No. 263 ("Def.'s SOF"), ¶¶ 1-2.  Jan Bonthu and Elizabeth Noble are authors who, through their companies — Plaintiffs Golden Unicorn Enterprises and Big Dog Books, respectively — used ACX to produce and publish audiobooks on Audible.  *Id.* ¶¶ 43-44, 65-66.

Every time Plaintiffs and other independent authors publish a title through ACX, they agree to the ACX Audiobook License and Distribution Agreement (the "Agreement").  *Id.* ¶ 7.  As relevant here, the Agreement provides that authors receive royalties on their "net sales," which are defined as sales net of, most notably, "returns."  *Id.* ¶ 8; ECF No. 267 ("Pls.' Counter

2

SOF"), ¶¶ 119-20; ECF No. 1-1 ("Agreement"), at 6-8.  Beginning in 2012, Audible permitted its customers to return audiobooks within 365 days of purchase, regardless of whether the customer had completed the book.  Def.'s SOF ¶¶ 25, 27.  Pursuant to this policy, which was known as both "A Great Listen Every Time" or the "Great Listen Guarantee," a customer could send a title back to Audible in exchange for either money or "subscriber credits," whichever the customer had used to purchase the title.  *Id.* ¶¶ 26, 98.  In addition, if a customer completed a title and rated it one or two stars, Audible would notify the customer of the option to exchange the title for a different one.  ECF No. 263-11, at 3; Pls.' Counter SOF ¶ 123.

In October 2020, a technical glitch permitted ACX authors to see on their account statements *gross* sales rather than *net* sales.  ECF No. 247 ("Pls.' MSJ Opp'n"), at 1.  Plaintiffs contend that, as a result, they and other authors realized for the first time that Audible deducted a substantial number of returns from their royalties.  Pls.' Counter SOF ¶¶ 135, 138, 143.  Responding to authors' complaints, Audible then changed its policy for calculating royalties.  On November 24, 2020, Audible announced that, effective January 2021, it would stop clawing back royalties on titles that were returned more than seven days after purchase.  Pls.' Counter SOF ¶ 155; ECF No. 191-45.  Audible also changed the marketing to customers of its return benefit, no longer describing it as a "swap."  *See* ECF No. 263-28 (Audible employee requesting that an advertisement stating that customers could swap one title for another be removed as part of the "global sweep").  As a result of the change in policy, ACX authors' royalties increased.  ECF No. 263-10 ("Dapito Tr."), at 199.

In August 2021, Plaintiffs filed this lawsuit on behalf of a putative class of ACX authors. *See* ECF No. 1 ("Compl.").  Following discovery, two claims remained: a claim for breach of contract and a claim for breach of the implied covenant of good faith and fair dealing.  With

respect to the latter, Plaintiffs proffered two theories of breach: first, that Audible breached the implied covenant of good faith and fair dealing by actively encouraging customers to return titles using its Great Listen Guarantee; and second, that Audible breached by "surreptitiously" deducting royalties from Plaintiffs and other authors through reporting net, rather than gross, sales on authors' statements. Pls.' MSJ Opp'n 13. In its July 14, 2023 Opinion and Order, the Court granted summary judgment to Audible with respect to Plaintiffs' contract claim and with respect to the second of their two implied covenant theories. With respect to the contract claim, the Court concluded that the Agreement unambiguously allowed Audible to do what it had been doing — namely, deducting from authors' royalties all "returns," defined as audiobooks that a customer gave back "in exchange for money or store credit, . . . even if [the customer] immediately purchase[d] a new title with the money or store credit." 2023 WL 4561718, at *4. It followed as well that Plaintiffs' second theory for breach of the implied covenant failed. As the Court explained, the Agreement "expressly permitted Audible to report net sales information, rather than gross sales, on authors' royalty statements." *Id.* at *9. And "[a] breach of implied covenant claim cannot be based on conduct permitted under the contract." *Id.* (citing cases).

Significantly, the Court also granted Audible's motion to preclude the testimony of Plaintiffs' expert, Joseph Egan, who provided damages calculations for Plaintiffs and opined that damages were calculable on a class-wide basis. *See id.* at *6-8. The Court did so on two grounds. First, the Court reasoned that Egan's calculation of Plaintiffs' damages involved "relatively simple arithmetic, not expert analysis" — namely, multiplication of "the price of each returned audiobook by the royalty rate Plaintiffs received." *Id.* at *6. "[M]aking matters worse," Egan's calculations appeared in an Audible document upon which he had relied; that is, he "simply replicated calculations that Audible had already done." *Id.* Second, and more

4

fundamentally, the Court found that "Egan's damages calculations, such as they [we]re, [did] not correspond to Plaintiffs' sole remaining claim . . . and, thus, [were] irrelevant, unreliable, and [would] not assist the trier of fact." *Id.* at *7. Plaintiffs' theory of damages for their remaining implied covenant claim, the Court explained, was based on the number of "exchanges" of Plaintiffs' audiobooks pursuant to Audible's "Great Listen Guarantee." In other words, "Plaintiffs distinguish[ed] between exchanges (i.e., when a title is returned and the customers uses the refund to purchase another title) and returns due to a technical defect or mistaken purchase." *Id.* But "Egan . . . tallie[d] up the royalties for *all* returns, regardless of whether the customer 'exchanged' the title or returned it due to a technical defect." *Id.*

Having excluded Egan's testimony, the Court noted that it "could probably" grant Audible's motion for summary judgment with respect to Plaintiff's other implied covenant theory — that the company breached by actively encouraging customers to return titles using its Great Listen Guarantee — on the ground that Plaintiffs had failed to provide "a competent or viable theory of damages for that species of alleged breach." *Id.* at *9. But instead the Court reserved judgment pending supplemental briefing. The Court explained as follows:

> Audible argues that Plaintiffs have not provided a competent or viable theory of damages for that species of alleged breach. There is much force to that argument. For starters, Plaintiffs rely on Egan's expert report, and the Court has now excluded it. But even if the Court had not done so, Egan's calculations, as discussed above, do not fit Plaintiffs' theory of liability, as he calculates the total royalties for *all* returns, not only those returns attributable to breach of the implied covenant through the Great Listen Guarantee. What is less clear is whether, in the absence of Egan's testimony, Plaintiffs can point to *any* theory of damages that is not merely speculative, possible, and imaginary. Because the parties' briefs addressed *both* Plaintiffs' contract claim and their implied covenant claim, Plaintiffs did not focus on that question. The Court could hold that failure against Plaintiffs; it is, after all, their burden to prove reasonably certain damages attributable to the breach. But mindful that the Court's ruling with respect to Plaintiffs' contract claim materially alters the landscape of the case, and that there may be evidence in the record that would support a viable theory of damages with respect to Plaintiffs' remaining implied covenant claim, the Court concludes that

5

the fairer course is to give Plaintiffs an opportunity to marshal the evidence, to the extent it exists, showing that they have a viable theory of damages.

*Id.* (cleaned up). Accordingly, the Court ordered supplemental briefing on "[w]hether Plaintiffs have a non-speculative basis for calculating damages caused by Audible's alleged breach of the implied covenant by encouraging customers to return titles using its Great Listen Guarantee." *Id.* at 10.[1] "For avoidance of doubt," the Court noted that the parties should limit themselves to evidence "in the existing record" because the summary judgment record was "closed." *Id.*

## MOTION FOR SUMMARY JUDGMENT

The Court begins with the Audible's motion for summary judgment with respect to Plaintiffs' remaining implied covenant theory. Summary judgment is appropriate where the admissible evidence and pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam). Such a dispute qualifies as genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes*

---

[1] The Court also directed the parties to brief "[w]hether Plaintiffs can satisfy the predominance requirement of Rule 23(b)(3), the commonality requirement of Rule 23(a), and Article III standing with respect to class certification for their remaining implied covenant claim." *Id.* The Court need not and does not address these issues here.

6

*Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

Under New York law, one "essential element" of a claim for breach of the implied covenant is "[p]roof of damages." *Process Am., Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 141 (2d Cir. 2016); *Sec. Plans, Inc. v. Cuna Mut. Ins. Soc'y*, 726 F. App'x 17, 20 n.2 (2d Cir. 2018) (summary order) (citing *RXR WWP Owner LLP v. WWP Sponsor, LLC*, 132 A.D.3d 467, 468 (1st Dep't 2015)). Moreover, damages "must be not merely speculative, possible, and imaginary, but they must be reasonably certain and such only as actually follow or may follow from the breach." *Tractebel Energy Mktg. Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 110 (2d Cir. 2007) (internal quotation marks and emphasis omitted); *accord Wilder v. World of Boxing LLC*, 310 F. Supp. 3d 426, 448 (S.D.N.Y. 2018) (noting that parties bringing a breach of implied covenant claim "must show that the breach . . . proximately caused their damages" (cleaned up)). When the amount of damages is uncertain, it is the "wrongdoer" who bears "the burden of uncertainty." *Contemp. Mission, Inc. v. Famous Music Corp.*, 557 F.2d 918, 926 (2d Cir. 1977); *see also Regan v. Conway*, No. 07-CV-3207 (ADS), 2010 WL 11629513, at *13 (E.D.N.Y. May 10, 2010) (explaining the wrongdoer rule in the context of a breach of implied covenant claim). Significantly, however, this rule applies only "when it is certain that damages have been caused by [the] breach" in the first place. *Tractebel Energy Mktg.*, 487 F.3d at 110 (internal quotation marks omitted). The burden is on the plaintiff to establish its entitlement to damages for breach of the implied covenant, and a defendant is entitled to summary judgment if it "point[s] to a lack of evidence to go to the trier of fact" as to either causation or damages. *Simsbury-Avon Pres. Club, Inc. v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009).

In light of these principles, Audible is entitled to summary judgment on Plaintiffs' remaining implied covenant theory. Put simply, Plaintiffs fail to provide a coherent theory, let alone evidence, of the damages attributable to Audible's alleged breach. At best, Plaintiffs point to the fact that Golden Unicorn "lost $38,701 in royalty review due to all returns" and Big Dog Books "lost $43,929." ECF No. 284 ("Pls.' Supp. Mem."), at 4 (citing ECF No. 249, ¶ 112). But, as the Court held in its earlier Opinion and Order, Audible was contractually entitled to deduct royalties for "returns." 2023 WL 4561718, at *4. The gravamen of Plaintiffs' remaining implied covenant claim is that Audible deprived them of the fruits of the contract by "actively encouraging customers to return titles using its Great Listen Guarantee." 2023 WL 4561718, at *9; *see* Pls.' Supp. Mem. 11 (describing the issue as "whether Audible *encouraged* readers to act in such a way that would further Audible's benefit under the contract while depriving authors of their full benefit"); *id.* at 6 ("Plaintiffs assert that they were damaged when Audible, in frustration of the contract's intended benefit to authors, *encouraged* readers to return books and then deducted the associated royalties on those books from class members' accounts."). As Plaintiffs themselves concede, *see* Pls.' Supp. Mem. 3 n.1, to prevail on that claim they therefore have to provide a means to distinguish between returns "actively encouraged" by Audible and other returns. Yet Plaintiffs fail to do so. Indeed, like Egan, they cite no evidence proving that Audible's purported "encouragement" led to the return of even a single audiobook.

In arguing that "the record does include evidence of damages" pursuant to their remaining theory of breach, Plaintiffs point to two facts in the record. Pls.' Supp. Mem. 3.[2]

---

[2] Plaintiffs assert that, at trial, they would rely on other, unidentified "categories of information" to prove causation and damages, but explain they are "not available to attach" because the Court "requested citation only to the existing summary judgment record." Pls.' Supp. Mem. 7-8. To avoid summary judgment, however, Plaintiffs "'may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that

8

First, they cite the fact that "when Audible stopped clawing back royalties on titles returned more than seven days after purchase, and stopped encouraging readers to 'swap' their purchases, authors' royalties increased." *Id.* (emphasis omitted). And second, they note that "Audible's own research" indicates that a percentage of customers "returned books for some reason other than technical defect or mistaken purchase." *Id.* at 7; *see also id.* at 3-4. But these facts prove neither causation nor damages. For one thing, Plaintiffs proffer no evidence that *they* themselves had an increase in royalties after Audible changed the seven-day policy and no evidence that any title of *theirs* was returned for a reason other than technical defect or mistaken purchase. That alone is fatal to Plaintiffs' claim. On top of that, however, these calculations of damages are as mismatched with Plaintiffs' theory of breach as Egan's calculations were. At bottom, Plaintiffs' arguments rest on the assumption that returns made more than seven days after purchase and returns made for reasons other than technical defect and mistaken purchase were attributable to Audible's encouragement. But that assumption finds no support in the record. As Audible points out, there are "countless reasons that a customer might return a title more than a week after purchase, without encouragement by anyone." ECF No. 290, at 8. And Plaintiffs themselves acknowledge that "returns" can properly include titles given back because the product was defective *and* titles given back because "the buyer was otherwise dissatisfied." Compl. ¶ 44; *see also* ECF No. 261, ¶ 100 (acknowledging the Egan had opined that "any returns because the audiobook was 'defective,' *or because the listener was 'otherwise dissatisfied,'* would be properly deducted from net sales and would not earn a royalty" (emphasis added)).

---

its version of the events is not wholly fanciful.'" *Golden Pac. Bancorp v. FDIC*, 375 F.3d 196, 200 (2d Cir. 2004) (quoting *Damico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998)). The fact that the Court generously invited Plaintiffs to submit a supplemental brief, rather than reopening the record altogether, does not relieve Plaintiffs of this burden.

Perhaps recognizing the frailty of their record evidence, Plaintiffs lean heavily on the rule that, where "the amount of damages is uncertain, then it is wrongdoer who bears the burden of uncertainty." Pls.' Supp. Mem. 8 (cleaned up). As noted above, however, this rule applies only "when it is certain that damages have been caused by [the] breach" in the first place. *Tractebel Energy Mktg.*, 487 F.3d at 110 (internal quotation marks omitted). And here, there is no such certainty, as Plaintiffs marshal no evidence from which a jury could find that even a single one of their audiobooks was returned as a result of Audible's "encouragement." Additionally, it is well established that damages may not be "merely speculative, possible, and imaginary, but they must be reasonably certain and such only as actually follow or may follow from the breach." *Id.* (internal quotation marks and emphasis omitted). Put differently, a plaintiff must at least provide a "stable foundation for a reasonable estimate" of damages. *Id.* at 110-11 (citation omitted). And here, Plaintiffs fail to do so. Indeed, they fail to proffer *any* evidence of damages attributable to Audible's "encouragement" — i.e., to the alleged breach of the implied covenant of good faith and fair dealing. *See* ECF No. 246 ("Pls.' Daubert Opp'n"), at 22 (conceding that "proof" of damages "has not yet been submitted"). It follows that Audible is entitled to summary judgment on Plaintiffs' remaining implied covenant theory as well.

## OTHER MOTIONS

In light of the foregoing, the parties' other substantive motions — Audible's motion for summary judgment with respect to three of its affirmative defenses; Audible's motion to preclude Plaintiff's other expert; Audible's motion for spoliation sanctions; Plaintiffs' motion to preclude an Audible expert; and Plaintiffs' motion for class certification — are moot.

That leaves only a slew of letter-motions to seal portions of their motion papers and supporting exhibits. *See, e.g.*, ECF Nos. 144, 163, 167, 175, 178, 188, 193, 207, 208, 229, 235,

238, 244, 256, 265, 281, 285, 289.  The Court granted these letter-motions temporarily, pending its decision on the underlying motions.  *See, e.g.*, ECF Nos. 150, 166, 172, 177, 179, 192, 196, 209, 227, 232, 237, 240, 251, 259, 269, 282, 288, 291.  Although a district court must generally consider sealing requests on a document-by-document basis, *see Brown v. Maxwell*, 929 F.3d 41, 48 (2d Cir. 2019), the Court reviewed a random selection of the parties' requests given the number and nature of documents at issue.  With two exceptions, the Court concludes that the parties' requests are narrowly tailored to "preserve higher values," *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006) (internal quotation marks omitted) — namely privacy interests and confidential business or client information — and thus approves them.

The first exception is ECF No. 148-1 (Exhibit K to Plaintiffs' Motion for Class Certification), 62:19-21.  Audible seeks to redact these three lines because they relate to internal strategy discussions.  *See* ECF No. 144, at 3.  Although much of the surrounding discussion does relate to internal strategy discussions, and therefore can properly be maintained in redacted form, these three lines are too vague to constitute confidential strategy information.  The second exception are Paragraphs 123 and 125 in ECF No. 263 (Plaintiff's Counter Statement of Undisputed Material Facts).  Audible seeks to keep this material redacted because it references confidential internal business practices.  ECF No. 256, at 2.  The redacted sentences do relate to Audible's business practices, but they are highly relevant to the Court's ruling on the breach of implied covenant claim.  Moreover, Paragraph 123 reflects a customer-facing policy, meaning that the information contained in the paragraph is at a minimum quasi-public.  Paragraph 125 does not reflect a policy of Audible; instead, it conveys an Audible employee's deposition testimony regarding his own understanding of how Audible's policy was implemented.  Thus, any value in protecting confidential business information is outweighed by the public's right of

access. This reasoning applies equally to the documents these paragraphs cite, namely ECF No. 263-11 (excluding the personal identifying information) and ECF No. 263-12, at 195:3-8.

Accordingly, **within two weeks of the date of this Opinion and Order,** Audible shall show cause in writing why ECF Nos. 148-1, 263, 263-11, and 263-12 should not be re-filed with the contents discussed above unredacted. If Audible fails to show cause by that date, it shall file the documents with the contents discussed above unredacted. Otherwise, the parties' requests to maintain the documents referenced in their various letter-motions to seal in sealed or redacted form are GRANTED without prejudice to any future application — by a party or any third party — for reconsideration as to a particular document or documents.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the rest of Audible's motion for summary judgment. The parties' other pending substantive motions are denied as moot.

The Clerk of Court is directed to terminate all open motions, to enter judgment for Audible in accordance with this Opinion and Order as well as the Court's Opinions and Orders of December 8, 2021, and July 14, 2023, *see* ECF Nos. 33, 280, and to close the case.

SO ORDERED.

Dated: September 20, 2023
New York, New York

_____
JESSE M. FURMAN
United States District Judge